Kadian MCBEAN et al., individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

The CITY OF NEW YORK et al., Defendants.

David Cence et al., individually and on behalf of a class of all others similarly situated, Plaintiffs,

v.

The City of New York et al., Defendants.

Joel Ramos, Foster Thomas, Daniel Velazquez, and Kenneth Williams, individually and on behalf of all others similarly situated, Intervenor–Plaintiffs,

v.

The City of New York et al., Defendants.

Nos. 02 Civ. 5426(GEL),
03 Civ. 4114(GEL).

United States District Court,
S.D. New York.

April 27, 2005.

Richard J. Cardinale, Cardinale, Hueston & Marinelli, Brooklyn, New York, Robert N. Isseks, Middletown, New York, for Plaintiffs.

Richard D. Emery, Matthew D. Brinckerhoff, Marian Mcier Wang, Emery, Celli, Brinckerhoff & Abady LLP, New York, New York, for Intervenor–Plaintiffs.

Michael A. Cardozo, Corporation Counsel of the City of New York (by Genevieve Nelson, Assistant Corporation Counsel), New York, New York, for Defendants.

## OPINION AND ORDER

LYNCH, District Judge.

In this putative class action for federal civil rights violations arising from policies or practices of the New York City Department of Corrections ("DOC") applied at New York City jails, plaintiffs move for class certification and appointment of class counsel, while intervenor-plaintiffs oppose plaintiffs' motions and cross-move for class certification and for appointment of intervenor-plaintiffs as class representatives and of intervenor-plaintiffs' counsel as class counsel. Plaintiffs' motions will be granted, and those of intervenor-plaintiffs will be denied.

## BACKGROUND

Plaintiffs in this consolidated action, represented by Cardinale, Hueston & Marinelli and Robert N. Isseks, bring suit on behalf of themselves and all others similarly situated, primarily for the allegedly unlawful strip searches to which they were subjected upon their post-arraignment admission to jails operated by DOC. It is undisputed that prior to July 22, 2002, DOC had a policy of strip searching every detainee newly admitted to its facilities, including those charged with misdemeanors and lesser offenses. (Cardi-

nale Decl., Ex. 2, ¶ 17 (affidavit of DOC Chief William Fraser submitted with amicus briefing in *Shain v. Ellison*).) The strip searches consisted of "a search of the inmate['s] apparel after the inmate has removed his/her clothing[,] accompanied by a visual inspection of the inmate's mouth, hair, armpits, knees and toes. The inmate is then instructed to squat to ensure that no contraband is being secreted in the area of the buttocks." (*Id.* ¶ 25.)

In *Shain v. Ellison*, 273 F.3d 56 (2d Cir. 2001), the Second Circuit held a similar blanket policy in force at the Nassau County Correctional Center unconstitutional, affirming a long line of its decisions dating back to *Weber v. Dell*, 804 F.2d 796 (2d Cir.1986), in which it had held that "the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest." *Weber*, 804 F.2d at 802. In *Shain*, a divided panel of the Second Circuit declined to apply the lesser standard of "reasonably related to legitimate penological interests," developed in the context of prison regulations by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (and applied to strip searches in prisons by the Second Circuit in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992)). *Id.* at 65–66. The Second Circuit also clarified in *Shain* that *Weber* and its progeny, *Walsh v. Franco*, 849 F.2d 66 (2d Cir.1988) and *Wachtler v. County of Herkimer*, 35 F.3d 77 (2d Cir.1994), applied to post-arraignment detainees. *Shain*, 273 F.3d at 63. Blanket policies mandating the strip search of *every* post-arraignment misdemeanor detainee upon admission, regardless of the existence of individualized reasonable suspicion that the detainee is concealing weapons or other contraband, are thus clearly unconstitutional under the law of this Circuit.

Plaintiffs in *McBean v. City of New York*, No. 02 Civ. 5426(GEL), female misdemeanor

arrestees admitted post-arraignment to DOC facilities, commenced suit on July 15, 2002, alleging that DOC had ignored *Shain,* and was continuing to implement an unconstitutional intake strip search policy. The complaint in *McBean* made additional allegations relating to nonconsensual gynecological examinations of female misdemeanor detainees (McBean Compl. ¶ 24–34), and, in fact, the proposed class was defined as "all women who since 1999:(1) have been charged with misdemeanors or non-criminal offenses in the City of New York; (2) who were detained at Rikers Island Correctional Facility; and (3) who were subjected to defendants' policy, practice, and custom of strip searching pretrial detainees: (a) without reasonable suspicion that the arrestee is concealing a weapon or other contraband, and/or in the presence of onlookers or members of the opposite sex; and (b) subjected to a nonconsensual gynecological examination." (*Id.* ¶ 4.) Just one week after the *McBean* suit was filed, DOC issued a new intake policy, Operations Order 08/02, which provides that "[p]ost-arraignment detainee inmates incarcerated for Misdemeanor and/or Violation Offenses shall not be made the subject of a strip search during the new admission process unless there is reasonable suspicion that the inmate is in possession of contraband." (Operations Order 08/02, Cardinale Decl., Ex. 14, at Part II.)

Plaintiffs moved for a preliminary injunction and for class certification on October 17, 2002, claiming that in spite of the purported official policy change, DOC had not changed its unlawful practices. (Letter of Richard J. Cardinale to the Court, dated December 9, 2002, at I.) Prior to moving for class certification, plaintiffs amended their complaint on October 11, 2002, to add additional named plaintiffs, at least one of whom was male, and to propose two separate classes: first, a class of all newly-admitted pretrial detainees, without regard to gender, subjected to DOC's strip search policy, and second, a class of newly-admitted female detainees

subjected to forced gynecological examinations. (Second Am. Compl. ¶¶ 5–6.) On December 18, 2002, the Court denied plaintiffs' preliminary injunction motion in an oral opinion, and deferred decision on plaintiffs' class certification motion pending a decision on an intervening motion by defendants to disqualify plaintiffs' counsel, and the completion of discovery on certain issues material to certification. A related case, *Cence v. City of New York,* No. 03 Civ. 4114(GEL), was filed on June 5, 2003, and consolidated for all purposes with the *McBean* case on July 25, 2003. The classes proposed in the *Cence* complaint were coextensive with those for which the *McBean* plaintiffs moved for certification in October 2002.

Decision on the certification motion was again deferred when the Court stayed discovery and further briefing on the motion by order dated August 25, 2003, pending the outcome of settlement negotiations. The parties attended several settlement conferences under the supervision of Magistrate Judge Theodore H. Katz through the end of 2003 and into early 2004. In mid-March 2004, Magistrate Judge Katz informed the Court that the parties had reached a settlement, and the parties submitted briefing requesting the Court's approval of the proposed settlement in accordance with Federal Rule of Civil Procedure 23(e).

The proposed "settlement class" differed from that defined in the amended *McBean* and *Cence* complaints, and consisted of only those "pre-trial detainees who, during the class period [July 15, 1999 through July 22, 2002], were arraigned on certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants regarding same, and who, after arraignment, were strip-searched in DOC jails." (Stipulation and Order of Class Action Stlmt. ("Proposed McBean Stlmt."), D. Cert. Opp. Mem., Ex. A, ¶ 1.) Excluded from the class were pre-trial detainees arraigned on certain narcotics and weapons-related charges.[1] Plaintiffs indicated in their briefing in support of

---

1. Specifically, plaintiffs' proposed class shall not include pre-trial detainees who, at the time they were admitted to DOC facilities, were charged with the following Penal Law Sections: (a) § 220.03 Criminal Possession of a Controlled

Substance in the Seventh Degree, a class A misdemeanor; (b) § 220.45, Criminal Possession of a Hypodermic Instrument, a class A misdemeanor; (c) § 220.50, Criminal Possession of Drug Paraphernalia in the Second Degree, a class A

the settlement that they were no longer pursuing claims for forced gynecological exams on behalf of the class, but that the settlement would not extinguish the rights of absent class members to pursue such claims in subsequent litigation.[2] (P. Stlmt.Mem.3, 14.) The proposed settlement provides absent class members who do not opt out of the settlement with individual awards of $750 (or $1000, if the individual was subject to multiple strip searches), named plaintiffs with incentive awards of $25,000, and the class as a whole with attorneys' fees and costs in the amount of $500,000. (Proposed McBean Stlmt. ¶¶ 28, 29, 43, 46.)

On February 18, 2004, however, just prior to the conclusion of the settlement negotiations, putative class members Joel Ramos, Foster Thomas, Daniel Velazquez, and Kenneth Williams, represented by Emery, Celli, Brinckerhoff & Abady LLP, moved to intervene as of right in the case. The putative intervenor-plaintiffs claimed their interests would be adversely affected by various terms of the proposed settlement, including plaintiffs' decision to narrow the class to exclude misdemeanor arrestees charged with narcotics or weapons-related offenses. In their Intervenor Class Action Complaint, the putative intervenor-plaintiffs purported to bring suit on behalf of a class of "all persons who have been or will be arraigned on misdemeanor or non-criminal offenses and then were or will be strip searched pursuant to City and DOC policy, practice, and custom" (Intervenor–P.Compl.¶ 21), restoring the broader strip search class proposed by the *McBean* plaintiffs in their October 2002 motion for class certification. The Intervenor Class Action Complaint did not purport, however, to bring claims on behalf of a class of

female detainees subjected to forced gynecological exams, and plaintiffs' decision not to pursue such class claims was apparently unobjectionable at the time to the intervenor-plaintiffs.

Following further briefing on the proposed settlement and the motion to intervene, as well as two conferences with all parties, the Court granted the motion to intervene and directed plaintiffs to file a new, amended motion for certification of the narrower class defined in the proposed settlement. Intervenor-plaintiffs opposed the certification of the narrower class, and cross-moved for certification of the broader class and appointment of intervenor-plaintiffs as class representatives, as well as appointment of their counsel as class counsel. Consequently, the Court is now faced with competing motions for class certification and appointment of class counsel, which must be resolved before any further action can be taken on the proposed settlement. The Court turns first to plaintiffs' motion for class certification, and concluding that it should be granted, denies intervenor-plaintiffs' competing motion. With the adequacy of plaintiffs and their counsel established, and no impairment to the rights of those excluded under the narrower class definition substantiated, intervenor-plaintiffs have provided no rationale for the Court to take the case out of the hands of the individuals and their chosen counsel who have initiated and prosecuted this action for the last three years.

## DISCUSSION

### I. *Standard on Class Certification*

■ To obtain class certification, plaintiffs must demonstrate that the class meets the

misdemeanor; (d) § 221.05, Unlawful Possession of Marijuana, a violation; (e) § 221.10, Criminal Possession of Marijuana in the Fifth Degree, a class B misdemeanor; (f) § 221.15, Criminal Possession of Marijuana in the Fourth Degree, a class A misdemeanor; (g) § 221.35, Criminal Sale of Marijuana in the Fifth Degree, a class B misdemeanor; (h) § 221.40, Criminal Sale of Marijuana in the Fourth Degree, a class A misdemeanor; (i) § 265.01, Criminal Possession of a Weapon in the Fourth Degree, a class A misdemeanor; (j) § 265.06, Unlawful Possession of a Weapon upon School Grounds, a violation; or were charged pursuant to the following New York City Administrative Code Sections: (a) § 10–131, Firearms; (b) § 10–133, Possession of

Knives or Instruments; and (c) § 10–134 Prohibition on Sale of Certain Knives; or where charged pursuant to Vehicle and Traffic Law § 1192(4), Operating a Motor Vehicle while impaired by the use of a drug. Proposed McBean Stlmt. ¶ 2.

2. The female putative class representatives, however, have apparently agreed to settle their claims of illegal forced gynecological exams in exchange for additional awards of $5,000–$10,000 under the terms of the proposed settlement. (Proposed McBean Stlmt. ¶¶ 46, 51; P. Stlmt. Mem. 17 n. 2.)

express requirements of Federal Rule of Civil Procedure 23(a), known as numerosity, commonality, typicality, and adequacy, and of one of the subsections of Rule 23(b). *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 132–33 (2d Cir.2001). Plaintiffs must also show that the class meets the implicit threshold requirement of ascertainability. *Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y.2003). Plaintiffs have the burden of establishing that the class satisfies all requirements. *Caridad v. Metro–N. Commuter R.R.,* 191 F.3d 283, 291 (2d Cir.1999). District courts must conduct a rigorous analysis of the Rule 23 requirements, which may require the court to probe behind the pleadings. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). However, courts are not required to make a preliminary inquiry into the merits of a case in order to determine whether it may be maintained as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Caridad,* 191 F.3d at 291 (2d Cir.1999). Where a court certifies a class, it must also appoint class counsel. Fed.R.Civ.P. 23(g)(1)(A).

Here, plaintiffs have moved for certification of their proposed class under Rule 23(b)(2) and (b)(3), while intervenor-plaintiffs seek certification only under Rule 23(b)(3). Although the Court must carefully examine each of the requirements antecedent to certification, intervenor-plaintiffs oppose plaintiffs' motion for class certification solely on their alleged failure to meet the adequacy requirement of Rule 23(a)(4). (Intervenor-P.Cert.Opp.Mem.3.) Not surprisingly, given the settlement posture of the parties, defendants have not opposed plaintiffs' motions, but they do oppose those of intervenor-plaintiffs, asserting the unworkability of their proposed class definition and the inadequacy of the proposed class representatives and class counsel. (D.Cert.Opp.Mem.3.)

## II. *Rule 23(a) Requirements*

Plaintiffs have requested that the Court certify a class of all pre-trial detainees who, during the class period of July 15, 1999, through July 22, 2002, were arraigned on certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants regarding same, and who, after arraignment, were strip-searched in DOC jails. The proposed class definition is narrower than plaintiffs originally proposed, primarily in that it excludes from the class individuals arraigned on narcotics and weapons-related charges. This exclusion of putative class members forms the core of intervenor-plaintiffs' opposition to plaintiffs' adequacy.

### A. *Ascertainability*

The requirement of ascertainability, though not expressly mentioned in Rule 23, is fundamental. *Hnot v. Willis Group Holdings Ltd.,* 228 F.R.D. 476, 480–81, 2005 WL 659475, at *2 (S.D.N.Y.2005). The class that plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling. *See Dunnigan,* 214 F.R.D. at 135 ("[P]laintiffs must demonstrate the existence of an 'aggrieved class' [and] that the aggrieved class can be readily identified."); *People United for Children, Inc. v. City of New York,* 214 F.R.D. 252, 256 (S.D.N.Y. 2003) ("[C]ourts should ensure that the class definition is 'precise, objective, and presently ascertainable.'") (citation omitted). A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination. *Dunnigan,* 214 F.R.D. at 135; *Fears v. Wilhelmina Model Agency,* 02 Civ. 4911(HB), 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003).

This requirement was not addressed by any of the parties with regard to plaintiffs' proposed class, perhaps because it is clearly satisfied. The class members are readily identifiable as all those admitted to certain facilities, following arraignment on specific charges, and subjected to strip searches. In other words, the class is defined wholly in regard to objective criteria, and no subjective determination of any sort will be required to determine membership. Indeed, defendants have apparently already been able to identify and count putative class members, see infra Part II.B.

## B. *Numerosity*

To satisfy the numerosity requirement of Rule 23(a), plaintiffs must show that joinder is "impracticable." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). Numerosity is generally presumed when a class consists of forty or more members. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). Neither intervenor-plaintiffs nor defendants dispute the numerosity of plaintiffs' proposed class. Defendants have acknowledged that there are 57,634 putative class members falling within the narrowed class proposed by plaintiffs. (Intervenor–P. Cert. Reply Mem. 7 n. 5.)

## C. *Commonality and Typicality*

■ Rule 23(a) also requires that the action raise an issue of law or fact that is common to the class (commonality), *see, e.g., Robinson v. Metro–North Commuter Railroad Co.,* 267 F.3d 147 (2d Cir.2001), and that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability" (typicality). *Id.* (citation omitted); *see also In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992). The factual background of each named plaintiff's claim need not be identical to that of all of the class members, *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 94 (S.D.N.Y.1998), so long as the claims arise from the same events, and the legal arguments on liability are the same. *Drexel,* 960 F.2d at 291. Where plaintiffs can make this basic showing, the typicality requirement is generally satisfied, "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux,* 987 F.2d at 936–37.

Neither defendants nor intervenor-plaintiffs have disputed that plaintiffs' proposed class satisfies the commonality and typicality requirements. Plaintiffs have identified legal and factual issues common to all proposed class members, *e.g.,* whether defendants had a policy of strip-searching all newly-admitted pre-trial detainees charged with misdemeanors and lesser offenses without regard to reasonable suspicion, and whether plaintiffs were strip-searched pursuant to that policy.

(P. Cert.Mem.12.) Each class member's claim arises from the same events—the blanket application of the policy—and the alleged absence of reasonable suspicion at the time the searches were conducted supplies the legal theory of liability for each and every class member. Thus, the requirements of commonality and typicality are met.

## D. *Adequacy*

■ Unlike the other requirements of Rule 23(a), intervenor-plaintiffs do challenge the adequacy of the named plaintiffs as class representatives. To determine whether a named plaintiff will be an adequate class representative, courts inquire whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000). Intervenor-plaintiffs challenge both the adequacy of the proposed class representatives and the competency of their counsel in a series of intertwined arguments, addressed in turn below.

### 1. *Settlement Terms*

Intervenor-plaintiffs first challenge the adequacy of the named plaintiffs as class representatives because they allege these plaintiffs and their counsel "have compromised the claims of absent class members for personal gain" by negotiating disproportionate awards for themselves in exchange for less favorable settlement terms for the absent class members. (Intervenor–P.Cert. Opp.Mem.11.) Specifically, intervenor-plaintiffs allege that the award amounts for the class members are inadequate; that because the award amounts to absent class members differ only as to whether the individual was strip-searched more than once, the settlement fails to take into account the full range of damages suffered across the class; and that the named plaintiffs have improperly relinquished the claims of absent class members to pursue claims for unlawful post-intake searches. (Intervenor–P.Cert. Opp.Mem.11–14.) Although the proposed class settlement is not before the Court for

approval, given the need to first resolve the competing motions for class certification, intervenor-plaintiffs contend that the terms of the negotiated settlement evidence the inability of plaintiffs and their counsel to adequately represent the proposed class's interests. It is in light of these arguments that the Court examines the challenged provisions of the settlement, keeping in mind that a class action settlement must be "fair, reasonable, and adequate," Fed.R.Civ.P. 23(e)(1)(C), but not with a view toward making any conclusive, or even conditional, findings about the settlement's suitability. In other words, to the extent that the Court comments on the reasonableness or otherwise of certain terms of the proposed settlement, it does so only to the extent necessary to address intervenor-plaintiffs' arguments that those terms on their face demonstrate the inadequacy of plaintiffs and their counsel to represent the class, and any comments made in that context are without prejudice to full examination of the fairness of the settlement at a later date.

■ The challenged settlement terms do not appear to the Court to evidence antagonism to the interests of absent class members, rather than the reasonable outcomes of what is by definition a two-sided negotiation. First, the awards to absent class members— $750 for a single illegal strip search and $1000 for multiple strip searches—seem consistent with awards for similar class action claims in other cases in this Circuit, particularly taking into account the risk of much lower recoveries if cases were fully litigated. Indeed, in *Shain I*, the Second Circuit not only confirmed the unconstitutionality of the conduct alleged here, but also upheld the district court's entry of nominal damages in the amount of $1.00 after the jury found plaintiff had not suffered a compensable injury. *Shain I*, 273 F.3d at 67.

The settlement agreement counsel for intervenor-plaintiffs negotiated in *Tyson v. City of New York*, No. 97 Civ. 3762(JSM), a class action suit involving the rights of pre-arraignment detainees, provides for awards of $22,500 and higher for class members electing to submit to a detailed, individualized examination of the value of their claims.

The base award, however, is just $250 for class members who elect not to pursue individualized damages. (Tyson Stlmt., Intervenor-P. Stlmt. Opp. Mem., Ex. 7.) It is not unreasonable for plaintiffs to negotiate on the assumption that class members might prefer a moderate amount in exchange for procedural ease and expedited payout. Nor are defendants getting off cheap, at least in comparison to the *Tyson* settlement: The total settlement fund in *Tyson* was capped at $50,000,000, including administrative costs and attorneys' fees (*Id.* ¶ 23), a sum comparable to the liability of defendants here if the estimated tens of thousands of class members file claims. Finally, these award amounts were negotiated under the close supervision of Magistrate Judge Katz. *See Co. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir.1990) (affirming fairness of settlement and citing with approval district judge's assertion that presence of court-appointed mediator in the negotiating process "helped ensure that the proceedings were free of collusion or undue pressure").

But intervenor-plaintiffs additionally object that the proposed $25,000 incentive awards to named plaintiffs are disproportionate, and therefore "demonstrate [p]laintiffs' willingness to accept large payments for themselves in exchange (presumably) for agreeing to substantially smaller sums for absent class members in derogation of their fiduciary duties." (Intervenor-P.Cert.Opp.Mem.11.) This argument is substantially undercut, however, to the extent that the awards negotiated for absent class members have been found adequate, thus undermining intervenor-plaintiffs' argument that plaintiffs conceded too much in the negotiations in exchange for larger payments for themselves. Moreover, if (as intervenor-plaintiffs allege) the named plaintiffs have not demonstrated that they have undertaken sufficient risk or effort in prosecuting this litigation to justify incentive awards (Intervenor-P. Cert. Reply Mem. 9 n. 7), the Court could decline to approve the settlement on this basis. In *Sheppard v. Consolidated Edison Co.*, No. 94 Civ. 0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug.1, 2002), the district court rejected the parties' first proposed settlement because, in the court's opinion, the proposed incentive

awards for named plaintiffs were excessive. The parties renegotiated this aspect of the settlement, and made a renewed application to the court for approval, this time committing the final amount of incentive awards (within specified maximums) to the discretion of the court. The court, finding incentive awards were merited in the case, approved the settlement, and adjusted the incentive award amounts to what it considered to be appropriate levels. *Sheppard,* 2002 WL 2003206, at \*5–\*7. Plaintiffs, citing *Sheppard,* have indicated in their briefing a willingness to submit to the Court's discretion in adjusting the amount of the proposed incentive awards. (P. Cert. Reply Mem. 4.) A term of the settlement left to the discretion of the Court by the parties, and which, in any event, may turn out to be perfectly reasonable as proposed, can hardly be characterized as evidence of named plaintiffs' willingness to look after themselves at the expense of the balance of the class.

Second, intervenor-plaintiffs argue that by providing uniform awards to absent class members, which differ in amount only if the class member was subject to multiple strip searches, named plaintiffs have failed to make "any effort of any kind ... to recognize and compensate the varying level of injury suffered by absent class members." (Intervenor–P.Stlmt.Opp.Mem.16.) More appropriate, intervenor-plaintiffs contend, would be something like the tiered compensation system of the *Tyson* settlement, briefly outlined above, under which class members could opt into an individualized determination of their claim, with amounts awarded increased by particular circumstances such as a "non-private search," "menstruation at time of search," and "abusive correction officer conduct" (Tyson Stlmt. ¶ 37), and even larger awards for class members demonstrating above average emotional distress. (*Id.* ¶ 51.) But although *Tyson* class members electing to engage in individual determination of their claims are potentially eligible for awards far in excess of the $750 or $1000 awards negotiated here, that eligibility comes at a substantial price, including, for the highest awards, releasing all medical, psychiatric, school and employment records, and submitting to a deposition and/or psychological examination

by a court-appointed psychologist or psychiatrist. (Tyson Stlmt. ¶ 49.) As already stated above, it is not unreasonable to negotiate a settlement on the assumption that the class and its individual members would be equally well served by moderate but automatic payments requiring nothing more of the class member than submitting a claim. Moreover, a settlement such as that negotiated and approved in *Tyson* comes with significant administrative expenses, which likely will reduce the amount of money available to compensate class members. (Indeed, defendants have represented to the Court that, based on the City's experience with the *Tyson* settlement, they would not agree to a similar settlement in this case.) The Court is inclined to agree that a settlement which is less procedurally complex would be more attractive to all involved, and ultimately more just. At a minimum, the Court does not find this aspect of the settlement in any way suggestive of bad faith on the part of named plaintiffs.

Third, intervenor-plaintiffs challenge the relinquishment of class members' claims to post-intake searches, claiming plaintiffs' counsel misunderstands the applicable law and characterizing the relinquishment of these claims as "forcing [class members] to accept a minimal recovery for unlawful *intake* searches and abandoning their right to recovery on other unlawful searches, or to attempt to navigate the court system and find a lawyer to investigate and represent them on an individual damages claim for all illegal searches undertaken by defendants." (Intervenor–P.Stlmt.Opp.Mem.20–21.) The language of the proposed settlement does include a waiver of class members' rights to "pursue, initiate, prosecute or commence any action or proceeding before any court, administrative agency, or other tribunal or to file any civil complaint with regard to any strip search at a DOC facility during the Class Period." (Proposed McBean Stlmt. ¶ 20.) But the Court need not consider the propriety of such a waiver: Plaintiffs have explicitly disavowed any intention to relinquish the rights of those subject to post-intake searches. Although plaintiffs have not directly addressed the waiver language in their

briefing on these motion, they have stated that "[t]o the extent that the settlement agreement is vague in this area, [they] are willing to clarify the agreement" and that they will "ensure that the claims of individuals who were subject to an illegal strip search post-admission are not foreclosed by the settlement agreement, but rather left open for individual actions, or a class action should objectors' counsel choose to commence one." (P. Stlmt. Reply Mem. 16–17.)

Admittedly, plaintiffs represent that the award amounts were negotiated in light of counsel's understanding that post-intake searches do not need to be justified by reasonable suspicion, and that therefore, plaintiffs would have difficulty convincing a jury that his or her damages "flow solely from the initial intake strip search, and not from subsequent strip searches or from the harshness of long term incarceration." (P. Stlmt. Mem.13–14.) While intervenor-plaintiffs are certainly correct that limits apply to both pre-and post-admission searches, and that therefore not *all* post-intake searches are legal, *see Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), it does not strike the Court as unreasonable or in way demonstrating plaintiffs' inadequacy that their view of the proper award amounts has been shaped by the difficulty of proving damages where plaintiffs have been subjected to what may be a co-mingled set of legal and illegal official conduct.

Thus, there is no substance to intervenor-plaintiffs' claims that plaintiffs have casually abandoned potentially valuable claims at the expense of absent class members, and any settlement in this case purporting to extinguish rights to pursue claims of illegal post-intake searches will not be approved. To prevent confusion, however, the Court will amend plaintiffs' proposed class definition to "pre-trial detainees who, during the class period [July 15, 1999 through July 22, 2002], were arraigned on certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants regarding

same, and who, after arraignment, were strip-searched in DOC jails *pursuant to the standard new admission strip search procedure.* "[3]

### 2. *Narrowing the Class Definition*

■ Intervenor-plaintiffs next argue that plaintiffs and their counsel have inadequately represented the class's interests in that they agreed to narrow the original class definition to exclude misdemeanor arrestees charged with weapons or narcotics-related offenses, thus "cut[ing] [those individuals] loose to fend for themselves" in exchange for settlement. (Intervenor–P.Cert.Opp.Mem.13.) Plaintiffs concede that the class for which they now request certification was narrowed because defendants perceive the law as unsettled with regard to individuals charged with narcotics and weapons-related offenses and are unwilling to settle the claims of such individuals. Plaintiffs contend, however, that narrowing the class permitted them to obtain a fair settlement on behalf of the class they now seek to certify, their only obligation. (P. Cert. Reply Mem. 4–5.) Those detained on narcotics or weapons charges remain free to pursue their claims in a separate action, or via the presence in this case of intervenor-plaintiffs charged on narcotics or weapons-related offenses.

Indeed, intervenor-plaintiffs cannot make the direct argument that narrowing the class definition shows that plaintiffs have interests antagonistic to interests of other members of the class. By definition, if plaintiffs' motion is granted, the class as certified will not consist of any individuals charged with narcotics or weapon-related offenses, whose interests may very well differ from those of the named plaintiffs, but to whom plaintiffs will owe no responsibility. And as the Second Circuit has explicitly held, "the broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the class ultimately certified by the District Court." *In re Holocaust*

---

**3.** This amendment further benefits the ascertainability of the class definition, discussed in Part II.A, by making it clear that class members are individuals strip searched in accordance with an admissions strip search policy, without regard to

subsequent strip searches conducted pursuant to other policies, not challenged by plaintiffs, but raised by intervenor-plaintiffs in their Amended Complaint. *See infra* note 9.

*Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir.2000). Therefore, plaintiffs and their counsel cannot be accused of retrenching on any obligation.

Instead, intervenor-plaintiffs appear to argue that dropping putative class members evidences bad faith on the part of plaintiffs, counsel, or both, and should give the Court pause as to whether plaintiffs and counsel have vigorously litigated this action, or are just interested in taking the easiest way out. This argument would have weight if there were no conceivable justification for plaintiffs' decision to narrow the class aside from desiring a quick and easy settlement. But defendants are clearly entitled to argue that individuals charged with narcotics or weapons-related offenses are differently situated than other misdemeanor arrestees. The Second Circuit has held that the Fourth Amendment "precludes prison officials from performing ... cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that arrestee is concealing weapons or other contraband *based on the crime charged*, the particular characteristics of the arrestee, and/or circumstances of the arrest." *Weber*, 804 F.2d at 802 (emphasis added). Defendants would appear to have at least a colorable argument that while a blanket policy subjecting all misdemeanor arrestees to strip searches is constitutionally impermissible under Second Circuit precedent, searches of individuals charged with narcotics or weapons-related offenses performed under the policy were constitutional, because the nature of the charges gave rise to reasonable suspicion. *See, e.g., Kennedy v. L.A. Police Dep't,* 901 F.2d 702 (9th Cir.1990) (finding blanket policy of subjecting all felony arrestees to visual body-cavity search unconstitutional, but going on to consider whether the particular circumstances of plaintiff's arrest gave rise to reasonable suspicion because "a search, although not supportable under an institutional policy, is not per se unconstitutional").

Intervenor-plaintiffs contend that this argument is foreclosed to defendants as a matter of law. It is indeed well-settled that reasonable suspicion must exist at the time the search is conducted, not supplied post hoc, *Maryland v. Garrison,* 480 U.S. 79, 85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), and intervenor-plaintiffs allege that "most, if not all, of the class members who were searched during intake at DOC facilities were searched by officers who *did not know the nature of the charges* against them and had already been searched earlier by the police *and remained in custody since that search."* (Intervenor–P. Cert. Opp. Mem. 14 n. 8.) Although the facts as alleged in the complaint must be assumed to be true for purposes of class certification, the Court is not bound by this standard in evaluating the vigor with which plaintiffs have conducted this litigation. The facts alleged by intervenor-plaintiffs would apparently be controverted. While defendants have conceded in their amicus submissions in the *Shain* litigation that each arrestee was searched pursuant to a mandatory and indiscriminate policy, they apparently have not conceded that facts (including the underlying charge) giving rise to reasonable suspicion were not known to the searching officers, or to officers on whom the searching officers might be entitled to rely, *see United States v. Colon,* 250 F.3d 130, 135–37 (2d. Cir.2001) (discussing the limits of the collective knowledge doctrine, under which in certain circumstances facts known to one officer may be imputed to a cooperating officer).

Without defeating commonality or lessening the predominance of the class-wide challenge to the policy itself, both of which are pre-requisites to certification, defendants would be entitled to offer evidence that reasonable suspicion existed at the time of particular searches as to certain individuals, and thus that the claims of those class members would be defeated. *See, e.g., Mack v. Suffolk Co.,* 191 F.R.D. 16, 23 (D.Mass.2000) ("[D]ifferences [including the particular circumstances of arrest and offenses charged] between the proposed class members, *while arguably relevant as defenses to liability,* do not change the fact that this class action raises the same basic claim and shares common questions of law ... [*i.e.,*] that these searches were unconstitutional because, conducted pursuant to a blanket strip-search policy, they were not based on a reasonable

suspicion that the individuals searched were concealing weapons or contraband. Therefore, Plaintiff has satisfied the [commonality and typicality requirements] despite varying defenses to liability which may be raised regarding particular individuals.") (emphasis added); *Doe v. Calumet City*, 754 F.Supp. 1211, 1220 & n. 22 (N.D.Ill.1990) (granting summary judgment in favor of class of female detainees indiscriminately strip-searched pursuant to a blanket policy, and noting that "if [defendant] believed that any specific searches or class of searches had a reasonable antecedent justification, [defendant] could have offered proof that the subjects of those searches should be excluded from the class, but it has failed to do that").

Intervenor-plaintiffs rightly argue that defendants could object that reasonable suspicion existed as to each and every arrestee: Even where the charge itself did not give rise to reasonable suspicion, there may have been other circumstances particular to the arrestee which would have. But defendants, for whatever reason, have apparently elected not to contest the claims of any individual not arrested on narcotics and weapons-related charges. Whether or not defendants are correct that the claims of individuals charged with narcotics and weapons-related offenses will fail, their willingness to litigate those claims, which they perceive as providing them with unique defenses, provides plaintiffs and their counsel with a legitimate justification for seeking to settle the claims defendants apparently do not wish to litigate.

Indeed, it could as easily be argued that the claims of detainees arrested on narcotics or weapons charges are sufficiently distinct that the same named plaintiffs or counsel should not represent a class consisting of detainees who were and who were not charged with such offenses. Plaintiffs' decision to seek a quick and certain recovery on behalf of strip-searched detainees held on non-drug and non-weapons charges is in the interests of members of that class, if not of those charged with such offenses. Intervenor-plaintiffs' plan for a larger class could be seen to be using the more certain claims of one subclass in an effort to leverage a settlement as to more contestable claims, at risk of greater delay and uncertainty for the non-drug, non-weapons subclass. It is by no means clear that this plan is superior to that of plaintiffs, or even permissible at all.

Moreover, it is not at all clear that the case law in this area is stable, even as to those individuals charged with non-weapons and non-narcotics offenses. The opinion in *Shain* was written over the dissent of Judge Cabranes, who would have applied the lesser standard of "reasonably related to legitimate penological objectives" from *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64, *Shain*, 273 F.3d at 70 (Cabranes, J., dissenting), while Judge Katzmann concurred only because he felt bound by Second Circuit precedents which left "no choice but to apply the 'reasonable suspicion' standard." *Id.* at 69–70 (Katzmann, J., concurring). A quick resolution, while the law is in their favor, thus may be very much in the interests of plaintiffs' proposed class. Accordingly, the Court is not persuaded that plaintiffs' decision to narrow the class in order to obtain relief for a subset of the original plaintiffs, while leaving unimpaired the rights of those excluded to pursue their claims separately, in any way demonstrates their inadequacy or that of counsel.

### 3. *Named Representatives*

Intervenor-plaintiffs further object that not all of the twenty named plaintiffs are members of the narrowed class, an argument to which plaintiffs make no response in their reply briefing. To be sure, named plaintiffs must be members of the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") Between the two consolidated actions, there are a total of twenty named plaintiffs, but only eight submitted declarations in support of the October 2002 motion for class certification. Intervenor-plaintiffs claim that of these eight plaintiffs, only four appear to have been arraigned on charges not related to weapons or narcotics. (Intervenor–P.Cert.Opp.Mem.14–15.) The Court's examination of these declarations,

and the *McBean* and *Cence* complaints, indicates that the four identified by intervenor-plaintiffs are indeed the only proposed class representatives for whom information as to the particular nature of the misdemeanor charge has been provided: Kadian McBean (assault), Toby Cohen (civil contempt), Cindia Cruz (assault), and Lisa Gregorio (violation of probation).[4] A fifth named plaintiff, Rhonda Jones, alleges the nature of her charge—assault in the third degree—on information and belief only, insufficient to establish her membership in the proposed class. While intervenor-plaintiffs' characterization of the declarations is thus correct, there *are* four named plaintiffs who are also clearly class members, and whose adequacy is not otherwise challenged on any grounds apart from those already addressed above. If more than these four named plaintiffs seek to be appointed class representatives, they must demonstrate their adequacy as members of the class. But for now it is sufficient that there are at least four named plaintiffs who are members of the class and can thus be appointed as class representatives.[5]

### 4. *Procedural Missteps of Plaintiffs' Counsel*

■ Finally, intervenor-plaintiffs argue that plaintiffs' counsel are inadequate because they have made a series of procedural missteps impairing or undermining the interests of the class, and thus that they are not "qualified, experienced and able to conduct the litigation."[6] First, intervenor-plaintiffs challenge the decision of plaintiffs' counsel not to have plaintiffs join or intervene in a related case, *Wilson v. City of New York*, No. 02 Civ. 465(NRB) (S.D.N.Y.), which they filed on behalf of Marsha Wilson in January

2002. Such action would have preserved the claims of putative class members subject to DOC's policy from January 1999. Instead, because the instant action was not filed until July 2002, claims arising prior to July 1999 are excluded by the statute of limitations and individuals with such claims are not included within the proposed class definition. The *Wilson* case eventually settled for $70,000. (D.Cert.Opp.Mem.11.)

But plaintiffs' request to have *McBean* filed as a case related to *Wilson* was denied by Judge Naomi R. Buchwald (to whom *Wilson* was assigned), perhaps deterring plaintiffs from seeking to have those cases consolidated. Moreover, while certain of Wilson's individual claims in that case overlap with the Fourth Amendment claims of the proposed class of plaintiffs here, her complaint as a whole was much more expansive, pressing § 1983 claims for false arrest and excessive force, as well as a host of equivalent state law claims. *See Wilson v. City of New York*, No. 02 Civ. 465(NRB) (S.D.N.Y.) (Complaint filed Jan. 18, 2002). The Court declines to fault counsel for bringing a separate action primarily challenging the strip-search policy, rather than muddying and prolonging the individual case of another client, to whom they also owed a responsibility. While there is certainly some cost to the would-be members of the class with claims falling between January 1999 and June 1999, the Court cannot see how counsel is obligated to these individuals, or how the so-called "delay" in filing this action demonstrates their inadequacy to vigorously litigate the claims of those on whose behalf they have sued. Intervenor-plaintiffs cite no authority for the proposition that counsel preparing a class action suit are obliged to intervene in

---

**4.** Plaintiffs' Second Amended Complaint identified Lisa Gregorio as bringing suit individually, but she is now listed as a named plaintiff in the proposed settlement.

**5.** Although the possibility that not all presently-named representatives are class members does not bar certification of the class, because there are at least some named plaintiffs who are class members, it does give the Court considerable pause in looking ahead to the potential approval of the proposed class settlement. The Court will require reassurances that the settlement was negotiated with the participation and approval of

bona fide class members, and not controlled by individuals now excluded from the class, who will not be entitled to the benefits they assumed they were negotiating on their own behalf, and who indeed would have interests antagonistic to the absent class members.

**6.** To the extent that intervenor-plaintiffs also challenge the adequacy of plaintiffs' counsel as it relates to the precise terms of the negotiated settlement, these arguments have been addressed above.

**500**

any pending action raising a similar individual claim, so as to expand the class they seek to represent to include class members who would otherwise be time-barred. Nor do intervenor-plaintiffs present any evidence that plaintiffs or their counsel unreasonably delayed bringing their action.

■ Second, intervenor-plaintiffs fault plaintiffs' counsel for what they claim are a series of procedural missteps made in the instant litigation: (1) improperly seeking approval of their proposed class settlement without providing proper notice to the class, and (2) moving for class certification under both Rule 23(b)(2) and (b)(3), even though, intervenor-plaintiffs allege, injunctive relief is no longer appropriate because DOC changed its strip-search policy shortly after the filing of the instant case.[7] (Intervenor–P.Cert. Opp.Mem.15–16.)

These arguments are thoroughly unpersuasive. The present procedural posture of this case is admittedly complex, but this owes more to the competing motions for class certification, than to any incompetence on the part of plaintiffs' counsel. While a settlement negotiated prior to formal class certification is subject to a "higher degree of scrutiny in assessing its fairness," *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir.2001), such settlements are not per se impermissible. Therefore, there is nothing improper about the parties having agreed to a resolution of the case, while plaintiffs' motion for class certification was *sub judice* (stayed at the request of both parties while settlement negotiations were under way) and accordingly no notice had yet been provided to the class about the pendency of the action, let alone the specific terms of the settlement agreement. Moreover, approval of a class settlement is generally a multi-step procedure, whereby a preliminary assessment of the settlement's fairness (and, if formal class certification has not yet occurred, approval of the settlement class) is made, following which the court directs notice to class members, and sets a date for a final fairness hearing on the proposed settlement. Manual for Complex Litigation, Fourth § 21.632. Therefore,

plaintiffs have not committed any error as notice was not yet required, either as to certification or settlement. The Court will still have an opportunity to ensure that whatever notice is directed includes all required information.

Nor has plaintiffs' counsel erred because it continues to seek certification under Rule 23(b)(2) and (b)(3), even though the proposed settlement no longer contains any injunctive relief, and DOC's policy change in July 2002 shortly after the filing of the instant action arguably renders injunctive relief moot. Plaintiffs' counsel has not moved for class certification for settlement purposes only. Although the proposed settlement as it currently stands contains no injunctive relief related to the strip search claim, should that settlement fail for any reason, there would be no bar to plaintiffs seeking class-wide declaratory or injunctive relief in the subsequent litigation, whether or not such relief is ultimately merited on the facts as they now stand. Plaintiffs' briefing in support of their motion for class certification under Rule 23(b)(2) demonstrates a thorough familiarity with the requirements of that rule, and nothing prevents plaintiffs from arguing in the alternative that they meet more than one of the categories of Rule 23(b). Although the Court concludes that certification under Rule 23(b)(3) is more appropriate than under Rule 23(b)(2), see infra Part III, counsel are not to be faulted because they have overreached in the relief they seek. *Cf. Spinner v. City of New York,* No. 01 Civ. 2715(CPS), 2003 WL 23648356, at *5–*6 (E.D.N.Y. Oct.10, 2003) (putative class counsel's request for injunctive relief, even after such relief had been substantially granted by another court, was neither a bar to a finding of their adequacy or to certification under Rule 23(b)(2)).

*5. Adequacy of Class Representatives and Counsel*

Having rejected intervenor-plaintiffs' objections, the Court must nonetheless make an independent assessment of the adequacy of the class representatives and their counsel. Pending an application by the plaintiffs to

7. *But see* infra note 9 (noting that intervenor-plaintiffs have amended their complaint to allege

an ongoing practice of illegal strip searches at intake in DOC facilities).

restore all of the originally named plaintiffs, the Court finds that Kadian McBean, Toby Cohen, Cindia Cruz, and Lisa Gregario are clearly adequate class representatives in that they are members of the proposed class, with claims identical to the remainder of the class, and have no demonstrated interests antagonistic to the interests of absent class members. Moreover, contrary to intervenor-plaintiffs' assertions, the Court's consideration of plaintiffs' counsel's credentials leads to the conclusion that they are qualified, experienced, and able to conduct class action litigation, and in fact have done so on at least three other occasions. *Spinner v. City of New York*, No. 01 Civ. 2715(CPS) (E.D.N.Y.) (Cardinale, Hueston & Marinelli and Robert Isseks); *Dodge v. County of Orange*, No. 02 Civ. 769(CM) (S.D.N.Y.) (Robert Isseks); *Maneely v. City of Newburgh*, 01 Civ. 2600(CLB) (S.D.N.Y.) (Robert Isseks). Although the class in *Spinner* has now been decertified, and the claims of individual plaintiffs settled (Spinner Stlmt. and Discontinuance, Intervenor–P. Cert. Reply Mem., Ex. 1), a settlement agreement in *Maneely* has been preliminarily approved by the district court. (Letter from Richard J. Cardinale to the Court, dated April 7, 2005, enclosing Maneely Order for Preliminary Approval of Stlmt.).

Accordingly, the Court finds that plaintiffs have satisfied their burden of establishing that the proposed class and its representatives meet the ascertainability, numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

### III. *Rule 23(b) Requirements*

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy one of the requirements of Rule 23(b). Plaintiffs have moved for certification under both Rule 23(b)(2) and Rule 23(b)(3), but the Court finds that the class is most appropriately certified as a Rule 23(b)(3) class.

A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Plaintiffs' proposed class would ordinarily fall well within the ambit of Rule 23(b)(2) in that defendants have allegedly applied a blanket strip search policy uniformly across the class, and because their Second Amended Complaint sought "an injunction ceasing all improper strip searches and nonconcensual gynecological examinations at New York City jails." Second Am. Compl. ¶ 56. Indeed, where plaintiffs seek institutional reform in the form of injunctive relief, certification under Rule 23(b)(2) is usually appropriate. *See In re Methy Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 209 F.R.D. 323, 341 (S.D.N.Y.2002).

But where non-incidental damages are sought in addition to injunctive relief, Rule 23(b)(2) certification is only permissible where "the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant." *Robinson*, 267 F.3d at 164 (citation omitted). In assessing whether injunctive or declaratory relief predominates, "a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* Clearly, reasonable plaintiffs would still bring this suit even if the possibility of monetary recovery was precluded given the seriousness of the constitutional violations alleged. *See Bell*, 441 U.S. at 576–77, 99 S.Ct. 1861 ("In my view the [visual] body cavity searches ... represent one of the most grievous offenses against personal dignity and common decency.") (Marshall, J., dissenting).

However, it does not appear that the injunctive relief sought will be "reasonably necessary and appropriate," even if plaintiffs do not settle and ultimately succeed at trial on the merits. Plaintiffs' proposed class is no longer defined in any way to include a subclass of female detainees subjected to forced gynecological exams, and plaintiffs have stated that they no longer plan to pursue class

claims related to forced exams. (P. Stlmt. Mem.14.) Although the proposed settlement will require defendants to provide detainees with "written patient information" advising them of the gynecological services offered as part of the intake medical exam and that "they have a right to refuse [such services], and that if they refuse, there will be no retaliation" (Proposed McBean Stlmt. ¶ 50), plaintiffs' abandonment of class claims related to forced gynecological exams moots this aspect of the requested injunctive relief, at least for plaintiffs' class.[8] As to enjoining defendants from "all improper strip searches," plaintiffs have clarified that this lawsuit concerns all improper *intake* strip searches. Since July 22, 2002, shortly after the instant action was filed, DOC's "new admission search procedures" provide that "post arraignment detainee inmates incarcerated for Misdemeanor and/or Violation Offenses shall not be made the subject of a strip search during the new admission process unless there is reasonable suspicion that the inmate is in possession of contraband." (Operations Order 08/02, Part II.) It does not appear from the facts now known to the Court that injunctive relief would be "both reasonably necessary and appropriate" to prevent the alleged constitutional violations from recurring. Therefore, although certification under Rule 23(b)(2) may have been appropriate before DOC policy change, injunctive relief can no longer be said to predominate the relief requested such that certification under Rule 23(b)(2) is merited.[9]

Certification under Rule 23(b)(3), however, is appropriate. Rule 23(b)(3) provides for certification where "the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Plaintiffs in this action are unified by a common legal theory (DOC's blanket policy subjecting all post-arraignment misdemeanor arrestees to intake strip searches was unconstitutional) and by common facts (each was allegedly subjected to one or more strip searches in accordance with this policy). As discussed above in connection with intervenor-plaintiffs' objection to narrowing the class, the claims may be defended against where it can be shown that reasonable suspicion existed at the time particular searches were conducted. But as the cases cited above also demonstrate, these individual defenses do not preclude certification provided they do not predominate. "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d at 136. On occasion courts have declined to certify broad classes of individuals subject to blanket strip search policies because of the role the particular circumstances of each search might play,

8. As already noted, the proposed settlement agreement does settle the individual claims of female class representatives subjected to gynecological exams, and extinguishes their rights to pursue these claims. But it leaves undisturbed the rights of the absent class members to pursue these claims via other avenues, including perhaps intervenor-plaintiffs' Amended Complaint, *see* infra note 10.

9. The Amended Complaint filed by intervenor-plaintiffs on April 7, 2005, renews allegations that defendants are implementing a blanket strip search policy without regard to individualized, reasonable suspicion. Intervenor-plaintiffs make these allegations in regard to strip searches conducted at intake, as well as those conducted subsequently. Thus the Amended Complaint contravenes the facts of the case as presented by all parties to date, *i.e.*, that a policy change of July 2002 effectively ended the alleged constitu-

tional violations at least with regard to intake strip searches. To the extent that these renewed allegations make injunctive relief once more "appropriate" and possibly even "reasonably necessary" to address the claims of plaintiffs and their proposed class, certification under both Rule 23(b)(2) and (b)(3), see below, might be merited. Nonetheless, the Court finds that certification under Rule 23(b)(3) is more appropriate, both in light of the conflicting factual "record" as it now stands developed, which leaves the Court at a loss as to evaluating the necessity or appropriateness of injunctive relief, and because Rule 23(b)(3) provides enhanced protection to class members by mandating notice and permitting opt-outs, protections the Court finds particularly important in the instant case given that class certification is taking place close in time to an anticipated settlement of the class claims.

whether as to liability, class membership, or individual damages claims, *see, e.g., Maneely v. City of Newburgh,* 208 F.R.D. 69, 78–79 (S.D.N.Y.2002) (collecting cases and ultimately granting only partial class certification as to the issue of the existence of a policy of strip searching without regard to reasonable suspicion, leaving it up to class members to bring individual suits to adjudicate whether their own rights had been violated.) But here, with a class narrowed to only those plaintiffs arrested on non-narcotics and weapons-related offenses, the field of individual defenses as to liability available to defendants is considerably constrained. Nor is class membership defined with respect to the existence of reasonable suspicion, and thus, no evidentiary hearings will be required to determine class membership in the first instance. Thus the predominance of the central legal and factual issues common to all class members is in no way threatened.

A class action is also the most efficient and superior means through which to resolve these claims, where the class size is estimated at over 55,000 individuals. Although the assumed socioeconomic status of the proposed class members—misdemeanor arrestees remanded for detention for inability to post bail—is likely to preclude a significant portion of the class from burdening the courts with individual claims, this, too, argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claims. *See Labbate–D'Alauro v. GC Services Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D.N.Y.1996) ("It is appropriate for the court [in examining Rule 23(b)(3) superiority] to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.") (internal quotation marks omitted). The Court does not understand any party to this litigation to contest the appropriateness of certifying plaintiffs'

proposed class under Rule 23(b)(3) and is, at any event, independently satisfied that certification under this subsection is warranted.

The class as proposed by plaintiffs meets the requirements of Rule 23(a) and satisfies one of the categories of Rule 23(b), and plaintiffs have identified at least four individuals qualified to serve as class representatives. Ordinarily, no more would be required to grant plaintiffs' motion for certification. Intervenor-plaintiffs, however, have not only objected to plaintiffs' motion, but have also cross-moved to certify a broader class of plaintiffs ("all pre-trial detainees who were arraigned on non-felony charges and thereafter strip searched pursuant to City and DOC policy, practice, and custom from July 15, 1999 through the date the policy ceased"), represented by intervenor-plaintiffs and their counsel. (Intervenor–P.Cert.Opp.Mem.3, 17.) Given that plaintiffs' proposed class falls entirely within that proposed by intervenor-plaintiffs, the Court cannot grant plaintiffs' motion without defeating that of intervenor-plaintiffs.

The Court finds this to be the appropriate result. Intervenor-plaintiffs entered the case on the theory that plaintiffs and plaintiffs' counsel were inadequate representatives, and that intervention was required to protect their interests, which they believed would be adversely affected by a settlement in the case. But as discussed above, intervenor-plaintiffs have failed to substantiate their concerns about plaintiffs' adequacy to represent the interests of the narrowed class. To the extent that individual intervenor-plaintiffs continue to be concerned about adequacy in spite of the Court's findings, they may opt out of the class and any proposed settlement, and, even without opting out of the settlement, they may continue to press their individual claims unrelated to intake strip searches and even seek class certification as to those claims.[10] Short of that, they are still

---

**10.** As noted above, *see* supra note 9, intervenor-plaintiffs have filed an Amended Intervenor Complaint. This complaint renews plaintiffs' original allegations on behalf of all misdemeanor detainees as to ongoing illegal intake strip searches and forced gynecological exams (the latter of which were never before pursued by the intervenor-plaintiffs) and makes additional alle-

gations as to illegal post-intake strip searches. (Intervenor–P.Am.Compl.¶¶ 59, 69.) The Court's disposition of the present certification motions, certifying a class for purposes of litigating class claims of illegal searches *at the time of admission,* in no way directly affects intervenor-plaintiffs' ability to pursue claims of illegal, post-intake strip searches or forced gynecological ex-

entitled to object to the terms of the proposed settlement, if and when that settlement again comes before this Court for approval.

As to the intervenor-plaintiffs who would now fall outside of the narrowed class, they have not demonstrated any way in which certification of the narrower class impairs their rights or interests.[11] By virtue of their status as intervenors, they remain litigants before this Court, free to bring claims on behalf of themselves or as proposed class representatives, and to seek class certification as to the classes and claims of their choosing. Intervenor-plaintiffs' broader class may or may not have met the requirements of Rule 23(a) and (b) for certification. Regardless, the Court is unpersuaded of the need to displace the plaintiffs who initiated this suit, carried it forward for over two years, and participated in extensive settlement negotiations, solely on the basis of a litigation strategy intervenor-plaintiffs find unpalatable, but which they have not demonstrated impairs the rights of the class to adequate representation or the rights of those now excluded from the narrowed class.

## CONCLUSION

Plaintiffs have demonstrated that their proposed class and four of its proposed representatives satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). Accordingly, plaintiffs' motion for class certification is hereby granted, and intervenor-plaintiffs' motion is denied. Kadian McBean, Toby Cohen, Cindia Cruz, and Lisa Gregario are appointed as class representatives, although other named plaintiffs may apply to the court to be appointed class representatives upon a showing of their class member-

ship. The class certified, as proposed by plaintiffs and amended herein, comprises "pre-trial detainees who, during the class period [July 15, 1999 through July 22, 2002], were arraigned on certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants regarding same, and who, after arraignment, were strip-searched in DOC jails *pursuant to the standard new admission strip search procedure.*" The "certain misdemeanors, violations, and misdemeanor charges of civil contempt, and non-felony warrants" are defined to exclude those offenses catalogued in note 1 supra.

The Court understands the applications of intervenor-plaintiffs for appointment as class representatives and their counsel as class counsel to be contingent on certification of their proposed class, and so those motions are denied as moot. Therefore, Cardinale, Hueston & Marinelli and Robert N. Isseks are the sole applicants for appointment as class counsel of the class now certified. Having already made extensive findings under Rule 23(a)(4) as to their ability to adequately and fairly represent the interests of the class, and noting in accordance with Rule 23(g)(1)(C) their long history with this case and their experience with other class actions, the Court grants their application and appoints Cardinale Hueston & Marinelli and Robert N. Isseks as counsel for the class.

Under Rule 23(c)(2)(B), the Court must "direct to class members the best notice practicable under the circumstances" for any class certified under Rule 23(b)(3), but the timing of that notice is committed to its discretion. Although the plaintiffs have not requested certification of the class for settle-

---

ams on behalf of themselves or any class of misdemeanor arrestees for which they seek certification at some later date. To the extent that a *proposed settlement* would relinquish any *such* claims it will be rejected by this Court. But the Court defers for another day whether claims of illegal, post-intake strip searches would impermissibly enlarge the scope of the litigation. *See Hartley Pen Co. v. Lindy Pen Co., Inc.,* 16 F.R.D. 141, 153 (S.D.Cal.1954) ("[An intervenor] cannot change the issues framed between the original parties, and must join subject to the proceedings that occurred prior to his intervention; he cannot unring the bell.").

11. Of the four original intervenor-plaintiffs, only one, Daniel Velazquez, would appear to fall outside the narrowed class based on his arraignment on charges for the criminal sale of marijuana in the fourth degree (a class A misdemeanor) and unlawful possession of marijuana (a violation). (Intervenor–P.Am.Compl.¶ 14.) Intervenor-plaintiffs amended complaint, however, adds five more named plaintiffs, and it appears that some of these additional named plaintiffs may also fall outside of the narrowed class.

ment purposes only, it is expected that the parties will shortly renew their application for preliminary approval of the proposed settlement, and assuming approval is forthcoming, notice of the proposed settlement will then be required under Rule 23(e). In the interests of efficiency and providing meaningful notice to class members, the Court defers directing notice until after it makes a preliminary assessment of the settlement, in anticipation that a combined notice of certification and proposed settlement, satisfying the heightened requirements of Rule 23(c)(2), may be possible. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir.1995) ("Since the plaintiff is offered the opportunity to opt-out of the [conditional, settlement] class simultaneously with the opportunity to accept or reject the settlement offer, which is supposed to be accompanied by all information on settlement, the plaintiff knows exactly what result he or she sacrifices when opting out.").[12] In order to avoid undue delay in providing notification, however, the parties are directed to make a renewed application for preliminary approval of the proposed settlement no later than May 15, 2005. In the event no application for preliminary approval is made by that date, the Court will direct immediate notice in accordance with Rule 23(c)(2).

SO ORDERED.

---

**12.** Where a court certifies a class narrowed from the one proposed in the Complaint, it may be appropriate for the Court to direct notice to those now excluded from the class, because the statute of limitations will start to run again for those individuals, and they may have relied on the class complaint. Manual on Complex Litigation, Fourth § 21.311. Here, however, the claims of those excluded from the class now certified are still preserved by the presence of similarly-situated intervenor-plaintiffs in this suit. The Court has not foreclosed the possibility that these intervenor-plaintiffs may bring a class certification motion on behalf of all those excluded by the Court's certification of the narrower class. Accordingly, no notice is required at this time to protect their rights.