Jorge **IGLESIAS–MENDOZA**,
et al., Plaintiffs,

v.

**LA BELLE FARM, INC.,**
et al., Defendants.

No. 06 CIV. 1756(CM).

United States District Court,
S.D. New York.

Jan. 29, 2007.

**366**

Daniel Werner, Workers' Rights Law Center of New York, Inc., Kingston, NY, for Plaintiffs.

Christine Mary Cooper, Monte Benton Lake, Natalie Kay Brouwer, McGuiness Norris & Williams, LLP, Washington, DC, for Defendants.

## DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF THEIR FAIR LABOR STANDARDS ACT AND NEW YORK LABOR LAW CLAIMS

MCMAHON, District Judge.

The named plaintiffs,[1] former employees of the defendants, commenced this action on March 6, 2006, claiming that La Belle Farm, Inc. and related persons and corporate entities violated various provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq,* New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650–655, and Mexican Law. Before this court is plaintiffs' renewed motion for certification of an opt-in class pursuant to 29 U.S.C. 216 for their wage and overtime claims under the Fair Labor Standards Act ("FLSA") and a Rule 23(b)(3) opt-out class for their New York Labor Law claims.

Specifically, plaintiffs move (1) for certification of their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b); (2) for authorization to send notice to all prospective members (3) for an order directing defendants to furnish the names and last known addresses of all prospective opt-in plaintiffs; (4) for an order appointing the Workers' Rights Law Center of New York, Inc. As class counsel; and (5) for certification of a New York Labor Law class pursuant to Rule 23.

For the reasons stated below, the plaintiffs' renewed motion for class certification is granted.

### Facts and Procedural History

The facts relevant to this motion for class certification are as follows: Plaintiffs Jorge Iglesias–Mendoza, Angela Leyva Garcia, Angelica Lucero–Beltran, and Alvaro Lucero were employed at defendants' operations on one or more occasions between on or about February 1, 2001 and August 30, 2005. With the exception of Leyva Garcia, who briefly worked as a butcher on La Belle Farm, all worked exclusively as duck feeders on La Belle Farm. The plaintiffs allege that over the course of several years, the employees at the defendants' poultry facilities in Sullivan County, New York, were not paid the minimum wage or overtime "while at the same time toiling as many as 12 hours per day, 7 days per week under abysmal working conditions." (Second Am. Cplt. at ¶ 1.) Plaintiffs additionally allege that while the spread of hours from the start to the finish of the workday often exceeded ten hours for defendants' employees, the employees did not receive an extra hour of pay at the basic minimum hourly wage rate on such days. Moreover the defendants purportedly did not display an up-to-date poster advising plaintiffs and other employees of their right to earn the minimum wage and overtime.

Plaintiffs' Second Amended Complaint in this action seeks relief for these alleged violations under the FLSA and New York Labor Law. It also states claims under various

---

1. The named plaintiffs are Jorge Iglesias–Mendoza, Angela Leyva Garcia, Angelica Lucero–Beltran, and Alvaro Lucero. The defendants are La Belle Farm, Inc.; Bella Poultry, Inc.; B & B Farm, Inc.; Saiping Enterprise, Inc.; Buena Vista Enterprise, Inc.; Cindy Farm, Inc.; Jose L. Farm, Inc.; Nelson Saravia; Hector Abel Saravia; and Cheuk Lee a/k/a Herman Lee. For purposes of this motion, defendants concede that the seven corporate defendants may be considered one entity.

provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") and Mexican Law. Plaintiffs originally moved for certification of a class that consisted of "migrant and seasonal agricultural workers." That definition was, by its express terms, tied to the scope of the AWPA. In its Reconsideration Order dated January 4, and in its preceding order denying class certification without prejudice, this court indicated that the recent Second Circuit decision in *Miles v. Merrill Lynch & Co., Inc.* 471 F.3d 24 (2d Cir.2006) prevented the court from certifying plaintiffs' class, as then defined, without resolving the underlying merits issue of the AWPA's applicability to any or all of the putative plaintiffs.

In response, the plaintiffs have proposed the following modified class definition for their FLSA and New York Labor Law claims: "All individuals employed by one or more Defendant(s) at Sullivan County, New York poultry facilities at any time between March 3, 2000 and the present." (Pl. Supp. Mem. at 2.)

### Analysis

### I. The Request for Leave to Proceed as an FLSA Collective Action

*A. Collective Action Certification*

Plaintiffs' First Cause of Action for violations of the FLSA alleges that defendants failed to pay the minimum wage of $5.15 per hour to plaintiffs (and others similarly situated) in violation of 29 U.S.C. § 206 of the FLSA and its implementing regulations and failed to pay overtime wages to plaintiffs (and others similarly situated) in violation of 29 U.S.C. § 207 and its implementing regulations. Plaintiffs further allege that defendants' violations of the FLSA were willful. Pursuant to 19 U.S.C. § 216(b), plaintiffs seek unpaid wages and an equal amount in liquidated damages, plus reasonable attorneys' fees.

Plaintiffs ask this court to pre-certify these claims as a collective or representative action under 29 U.S.C. § 216 and to authorize notice to prospective plaintiffs. In contrast to the "opt-out" procedure of the Rule 23 class action, proposed class members to a FLSA representative action must "opt in" by filing a written consent with the court. The FLSA permits employees to maintain such an action "for and in behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b). When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purposes of the FLSA. *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2d Cir.1978).

■ Courts generally follow a two-step process when deciding whether to certify a representative action. *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y.2006). At the first stage, the court will look at the pleadings and affidavits. If the plaintiff satisfies "the minimal burden of showing that the similarly situated requirement is met," the court certifies the class as a collective action. *Id.*(citing *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y.2005)). "At this juncture—also termed the 'notice stage'—the court applies 'a fairly lenient standard' and (when it does so) typically grants 'conditional certification.' " *Torres v. Gristede's Operating Corp.,* 2006 WL 2819730, *7, 2006 U.S. Dist. LEXIS 74039, *37–38 (S.D.N.Y. Sept 28, 2006)(quoting *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409)(W.D.Pa.2000). Potential class members are then notified and provided with the opportunity to opt in to the action. *Scholtisek,* 229 F.R.D. at 387.

After discovery—and usually upon a defendant's motion for decertification of the class—a court examines the record and again makes a factual finding regarding the similarly situated requirement. If the claimants are indeed similarly situated, the collective action proceeds to trial, and if they are not, the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims. *ABC Carpet & Home,* 236 F.R.D. at 197.

■ Neither the FLSA nor its implementing regulations defines the term "similarly situated." *Hoffmann v. Sbarro, Inc.* 982 F.Supp. 249, 261 (S.D.N.Y.1997). However, courts have held that at the preliminary or conditional certification stage, plaintiffs can satisfy the "similarly situated" requirement by making "a modest factual showing sufficient to demonstrate that they and potential

plaintiffs together were victims of a common policy or plan that violated the law.'" *Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y.1998); *see also Krueger v. New York Telephone Co.*, 1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early stages, plaintiffs need only provide "some factual basis from which the court can determine if similarly situated plaintiffs exist.") The "similarly situated" standard for certifying a class action is thus considerably more liberal than class certification under Rule 23. For certification of a representative action, "no showing of numerosity, typicality, commonality and representativeness need be made." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005).

■ At this preliminary certification stage, plaintiffs have satisfied their minimal burden of showing that they are "similarly situated" to the proposed class members. All of the proposed class members are current or former employees of the defendants' poultry facilities. In their declarations, the named plaintiffs set forth some of the factual bases for their claims along with their knowledge of the applicability of their claims to members of the proposed class. The named plaintiffs have adequately alleged that they together with the proposed class members were subjected to common wage, overtime and payroll practices that violated the FLSA. Having done so, they are entitled to proceed in a representative capacity.

Defendants respond that the named plaintiffs are not "similarly situated" to the proposed class members because—with the exception of Plaintiff Leyva–Garcia's short tenure as a butcher—all worked exclusively as duck feeders at La Belle Farm. Because duck feeding is a unique job, "with different work schedules and requirements," defendants contend, plaintiffs cannot allege a common practice or policy with respect to other workers at defendants' other poultry facilities. (Def. Response to Pl. Supp. Mem. at 3.) Defendants submit that the collective action should therefore be limited to employees of defendants' duck feeding operations.

Defendants are incorrect. Only very limited discovery has taken place to date in this action. The plaintiffs rely, as they are entitled to do at this stage of the proceedings, on the pleadings and their own declarations. Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class. Whether plaintiffs' evidence will suffice to survive a motion for summary judgment or to carry their burden at trial will become apparent in due time and in the light of full discovery. For the moment, the factual variations defendants rely on do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA.

Defendants' arguments against this conclusion are, to put it mildly, frivolous. For instance, defendants contend that the named plaintiffs "cannot represent the interests of employees" at B & B Farm, Inc. because B & B Farm is "a real estate company with no employees." (Def. Response to Pl. Supp. Mem. at 4.) True, plaintiffs cannot "similarly situated" to individuals who do not exist. But if B & B Farm has no employees, then it will contribute no dissimilar members to the proposed class. Moreover, defendants have conceded, for purposes of this motion, that the seven corporate defendants may be considered a single entity.

Equally meritless is defendants' argument that plaintiffs cannot adequately represent the interests of the proposed class because their work activities are covered by the agricultural overtime exemption under the FLSA. *See* 29 U.S.C. § 213(b)(12). Defendants have not shown that the named plaintiffs are not "similarly situated" to members of the proposed class with respect to this defense. Indeed, as the court understands it, defendants claim that all its farm workers are covered by the agricultural overtime exemption, which would make plaintiffs' claims completely typical of the claims of class members!

The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice. *Schwed v. General Elec. Co.*, 159 F.R.D. 373,

375 (N.D.N.Y.1995)("Even where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]."); *Krueger*, 1993 WL 276058 at *2 ("Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case."). If the fruits of full discovery reveal that plaintiffs are not, in fact, "similarly situated" to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are "similarly situated," I may later decertify the class or divide it into subclasses, if appropriate. *Realite*, 7 F.Supp.2d at 306. At this preliminary stage, plaintiffs' request for authorization to prosecute their FLSA claims collectively pursuant to 29 U.S.C. § 216(b) is granted.

*B. Statute of Limitations*

■ The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. See 29 U.S.C. § 255(a). Where wilfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action. *See Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234, 240 (N.D.N.Y.2002). Defendants do not contest that three years—as opposed to two—is the appropriate time frame for the collective action certification period.

■ Plaintiffs argue, however, that because the defendants allegedly did not post the notices required by the FLSA, 29 C.F.R. § 516.4, it would be appropriate for the Court to certify the FLSA opt-in class for the entire six-year statute of limitations period applicable to the New York Labor Law claims. Plaintiffs rely for this proposition on *Baba v. Grand Central P'shp.*, 2000 WL 1808971, 2000 U.S. Dist. LEXIS 17876 (S.D.N.Y. Dec. 8, 2000). In considering defendants' motion for summary judgment based on the FLSA statute of limitations, the *Baba* court recognized authority to the effect "that the failure to post the required notice equitably tolls the statute of limitations un-

less and until an employee has actual notice of his rights." *Id.* at *2, 2000 U.S. Dist. LEXIS 17876 at *4 (citing *Kamens v. Summit Stainless, Inc.*, 586 F.Supp. 324, 328 (E.D.Pa.1984)). Since the parties in *Baba* disputed whether notice had been adequately posted, the court denied the defendants summary judgment on the issue of equitable tolling.

In the present case, plaintiffs have alleged that defendants failed to post notices advising plaintiffs and other employees of their right to earn the minimum wage and overtime compensation as required by the FLSA. (Second Amended Cplt. at ¶ 97.) Neither side has adduced any evidence with respect to this issue. At this juncture I must assume the factual allegation to be true. The court is inclined to follow *Baba* and to permit plaintiffs full discovery on the adequacy of notice and the applicability of the equitable tolling doctrine before deciding what the statute of limitations is. The court is mindful of the fact that, by virtue of the plaintiffs' New York Labor Law claims, notice will be sent to employees who have worked for the defendants over the last six years whether or not the FLSA action is subject to a shorter statute of limitations. See *Realite*, 7 F.Supp.2d at 308 (in FLSA and New York Labor Law action, "plaintiffs are entitled to notify all hourly paid employees who worked at the 15 Ark Restaurants within the last six years of the pendency of this lawsuit ... It will then be up to those individuals to decide whether they wish to opt-in to this action.") Certifying the same class period for plaintiffs' FLSA and New York Labor Law claims at this stage will therefore simplify class notice. By accepting plaintiffs' proposed class period for purposes of preliminary certification, the court makes no binding determination as to which statute of limitations will ultimately apply to plaintiffs' FLSA claims. Defendants will have the opportunity to renew their argument that a two- or three-year statute of limitations applies at the conclusion of discovery.

**II. Notice**

For the reasons discussed, the court authorizes plaintiffs to send notice of the pen-

dency of this lawsuit to the class of persons proposed by the plaintiff. The parties have thirty days from the date of this order to negotiate and present to the court a mutually agreeable class notice or, if their efforts at an agreement are unsuccessful, competing proposed notices.

## III. Request for Disclosure of Names and Addresses

The defendants are ordered to disclose to the plaintiffs the names and last known addresses of prospective opt-in plaintiffs by thirty days from the date of this order. *See Realite,* 7 F.Supp.2d at 309–310.

## IV. Request for Certification of a New York Labor Law Class

In their Third Cause of Action, plaintiffs allege that defendants paid plaintiffs (and others similarly situated) less than the state-mandated minimum wage in violation of New York Labor Law § 652 and § 670 *et seq.*; that defendants failed to pay overtime wages to plaintiffs (and others similarly situated) in violation of New York Labor Law Article 19 and its implementing regulations; that defendants failed to pay plaintiffs (and others similarly situated) an extra hour of pay at the basic minimum hourly wage rate before allowances, for every day when plaintiffs' work day was longer than ten hours, in violation of New York Labor Law § 160 *et seq.* and § 190 *et seq* and New York State Department of Labor regulations; and that these failures to pay the wages required by law were willful. Plaintiffs seek relief in the form unpaid wages, prejudgment interest, and reasonable attorneys' fees.

Plaintiffs ask this court to certify a Rule 23(b)(3) opt-out class for their claims under the New York Labor Law. For the reasons discussed below, plaintiffs' request for class certification of their New York Labor Law claims is granted.

### A. Rule 23(a) Requirements

Under Rule 23(a), a party seeking class certification must establish that 1) the class is so numerous that joinder of all members is impracticable; 2) there are common issues of law and fact; 3) the claims of the representative parties are typical of the class; and 4) the representative plaintiffs will fairly and adequately protect the interests of the class.

I will address each of these requirements in turn.

### 1. *Numerosity*

Rule 23(a)(1) requires a potential class to be "so numerous that joinder of all members is impracticable." The Second Circuit has made clear that impracticability for purposes of Rule 23 class certification does not mean impossibility. *See Robidoux v. Celani,* 987 F.2d 931, 935–36 (2d Cir.1993). Thus a presumption that joinder is impracticable can be said to arise where the prospective class consists of 40 members or more. *Id.* The plaintiffs allege that there are approximately 125 workers who fall within the proposed class definition solely for the time period during which they were employed at the defendants' operations. Given the high rate of turnover plaintiffs allege, the number of workers for the entire six-year period for which certification is sought would be significantly greater still. With these numbers, plaintiffs easily satisfy the numerosity requirement.

### 2. *Commonality and Typicality*

Rule 23(a)(2) requires that there are "questions of law or fact common to the class" whereas Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." As a practical matter, the two requirements tend to merge in the Second Circuit's class certification inquiry. *See Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291 (2nd Cir.1999). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *See General Tel. Co. v. Falcon,* 457 U.S. 147, 157–58 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The commonality and typicality requirements are satisfied when plaintiffs' grievances share common questions of law or

fact and "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability ..." *Robidoux*, 987 F.2d at 936–37; *Hnot v. Willis Group Holdings, Ltd.*, 228 F.R.D. 476, 485 (S.D.N.Y.2005). Under this court's jurisprudence, a single common question of law or fact may suffice. *See Marisol A. v. Giuliani*, 126 F.3d 372, (2d Cir.1997).

 The complaint raises a number of questions of law and fact common to all members of the class, including, inter alia, factual questions regarding defendants' payroll practices, overtime policy, and compliance with minimum wage requirements, as well as legal questions concerning the applicability of the New York Labor Law and any exemptions. Once a common question is identified, "differences among the questions raised by individual members [of the class] will not defeat commonality." *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 553 (S.D.N.Y.1995). Moreover, it is clear that all of the proposed class members would rely on the same allegedly wrongful conduct of the defendants and muster the same legal arguments in support of their New York Labor Law claims.

Defendants make much of the undisputed fact that plaintiffs Iglesias–Mendoza and Leyva Garcia performed work almost exclusively as duck feeders in one department of La Belle Farm, Inc., where they worked three shifts a day, and that workers in other departments performed different tasks on a different schedule. Yet courts have found the requirement of commonality and typicality satisfied despite the existence of similar factual variations. In *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002), the court found no defect of commonality or typicality where the prospective class members worked on different vessels, doing different jobs in different departments that calculated overtime pay using different methods, among other factual variations in the plaintiffs' claims. *Id.* at 154–55. "As long as plaintiffs assert ... that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Id.* In *Ansoumana v. Gristede's Operating Corp.* 201 F.R.D. 81, 86 (S.D.N.Y.2001), the court simi-

larly held: "The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found," not the amenability of the plaintiffs' claims to the class action form.

In this Labor Law case, where the gravamen of the claim is that workers were not paid a minimum wage and were not paid for overtime work, the fact that the named plaintiffs worked with one kind of animal while other class members worked with another kind of animal, or that the named plaintiffs worked on feeding while other class members worked on slaughtering or packaging, is not a distinction that makes a difference. And if the distinctions were germane to the analysis, Plaintiff Leyva Garcia has not only worked as a duck feeder but also spent three to four months in the butcher operation. That Leyva Garcia only worked in this capacity for a short period of time is of no moment. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y.2004). Her claims satisfy the commonality and typicality requirement as to those of defendants' workers who operated on a fixed shift.

Moreover, as plaintiffs rightly note, employees should not be penalized for defendants' failure to record the hours worked by employees or to provide any of the employees with wage statements reflecting hours worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *see also Reich v. Southern New Eng. Telcoms. Corp.*, 121 F.3d 58 (2d Cir.1997). The plaintiffs claim that defendants' own unlawful payroll practices have purged their records of evidence that would show class-wide wage and hour violations. At this preliminary stage, before extensive merits discovery, plaintiffs' own statements suffice to establish the commonality and typicality of their wage and hour claims.

3. *Adequacy of Representation*

 Rule 23(a)(4) requires that plaintiffs demonstrate that the proposed action will fairly and adequately protect the interests of

the class. To satisfy this requirement, plaintiffs must show 1) that there is an absence of conflict and antagonistic interests between them and the class members, and 2) that plaintiffs' counsel is qualified, experienced and capable. *Vengurlekar v. Silverline Techs., Ltd.,* 220 F.R.D. 222, 227; see also *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992).

▌ Defendants contend that plaintiffs fail to satisfy the first of these two prongs on the ground that one of the named plaintiffs, Iglesias–Mendoza, was fired for misconduct, and defendants therefore intend to raise additional defenses against him that they will not raise against other class members.

As discussed above, individualized factual questions concerning the representative's claim will not necessarily bar class certification. A defense unique to the putative class representative will be fatal under Rule 23 only when it threatens to become the focus of the litigation. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000). Defendants assert, in conclusory fashion, that the defenses they intend to raise against Iglesias–Mendoza amount to a "conflict between plaintiffs and the class members they seek to represent." (Opp. Brief at 23).

I fail to see why the circumstances of Iglesias–Mendoza's termination are relevant to whether he was paid overtime wages or less than the minimum wage during the period while he was employed. Indeed, I am prepared to rule today that such evidence is irrelevant and will not be considered by the court.

As with the FLSA claims, defendants argue that plaintiffs are inadequate representatives because the resolution of their overtime claims depends on whether they are exempt from coverage under the New York Labor Law. But this affirmative defense does not appear to be unique to the named plaintiffs. It seems to apply (or not apply) to the class as a whole. It is therefore irrelevant to the adequacy of the named plaintiffs' representation of the proposed class.

▌ Nor are plaintiffs inadequate class representatives because Plaintiffs Iglesias–Mendoza and Leyva Garcia initially struggled at their depositions to articulate the legal bases for some of their claims.[2] Rule 23 requires that the named plaintiffs have adequate personal knowledge of the essential *facts* of the case; the court is satisfied that they do. For the legal underpinnings of their claims, plaintiffs are entitled to rely on the expertise of their counsel. *See Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 124 (S.D.N.Y.2001).

Although defendants argue that named plaintiffs lack the ability to "ensure vigorous prosecution of the litigation" by "at least minimally supervis[ing] class counsel," the courts have held that "a rigid application of this requirement is inappropriate where, as here, the class comprises relatively low-skilled laborers. Such inflexibility runs counter to a principal objective of the class action mechanism-to facilitate recovery for those least able to pursue an individual action." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.25[4][c][i]-[ii](3d ed.2003); *See Noble v. 93 University Place Corp.,* 224 F.R.D. 330, 344–345 (S.D.N.Y. 2004).

## B. Rule 23(b)(3) Requirements

Before they may proceed as a class, plaintiffs must also satisfy the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that common issues of law and fact predominate over individual claims, and that a class action is superior to other means of adjudicating the action.

### 1. Predominance

The predominance requirement is a more demanding version of the commonality requirement of Rule 23(a). *See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623–624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002). Thus, "when determin-

**2.** It should be noted that when plaintiffs reviewed the deposition transcripts, they made modifications to their answers before signing the

transcripts, as permitted by Fed.R.Civ.P. 30(e). (Iglesias Dep. at 115:23–116:12; Leyva Dep. at 103:7–104:12, 118:10–13).

ing whether common issues predominate, courts focus on the liability issue ... and if the liability issue is common to the class, common questions predominate over individual ones." *Bolanos,* 212 F.R.D. at 157–58. Moreover, while a court evaluating whether a movant has satisfied the requirements of Rule 23(b)(3) must examine both the claims and the defenses, the mere fact that a defense " 'may arise and ... affect different class members differently does not compel a finding that individual issues predominate over common ones.' " *Noble,* 224 F.R.D. at 339 (quoting *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 138 (2d Cir. 2001)) The relevant inquiry is "not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense." *Id.*

 In the present case, common questions of liability clearly predominate over individual inquiries. The issues to be litigated are whether the class members (1) were supposed to be paid the minimum wage as a matter of law and were not, and (2) were supposed to be paid overtime for working more than 40 hours a week and were not. These are about the most perfect questions for class treatment. Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement. *See e.g., Bolanos,* 212 F.R.D. at 157–58 (in overtime case, common issues predominate despite the fact that employees worked in different positions, for different departments, on different ships, at different times, and under different supervisors.) Should plaintiffs prevail, things like any variations in schedule and type of work performed will determine the measure of damages.

The court is similarly unpersuaded that individualized questions raised by any of defendants' purported defenses will predominate over questions common to the class. Indeed, the argument is silly.

*2. Superiority*

 In determining whether the class form represents a superior mode of adjudication, the court should consider, inter alia, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficul-

ties likely to be encountered in the management of a class action." Rule 23(b)(3). The superiority requirement is easily satisfied on the facts of this case. The proposed class members are almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system. It is extremely unlikely that they would pursue separate actions. *See, e.g., McBean v. City of New York,* 228 F.R.D. 487, 503 (S.D.N.Y. April 27, 2005)("Although the assumed socioeconomic status of the proposed class members ... is likely to preclude a significant portion of the class from burdening the courts with individual claims, this ... argues in favor of class action treatment to protect the rights of class members unable to litigate their individual claim.") Moreover, the court does not foresee any particular difficulties to be encountered in the management of the class action and is confident that any such concerns can be addressed by counsel and the court if and when they arise.

*C. Joint Certification of the Rule 23 New York Labor Law Class and the FLSA Representative Action is Appropriate and Manageable*

Defendants raise a number of additional arguments against joint certification of a New York Labor Law Class and an FLSA representative action—all of them unfounded.

*1. Defendants' Liquidated Damages Contention*

 Defendants contend that Rule 23 class certification should be denied because New York Labor Law does not permit class actions claiming liquidated damages unless expressly provided for by the statute giving rise to the cause of action. *See* N.Y. C.P.L.R. § 901(b) This argument has been repeatedly rejected by the courts. *See Brzychnalski,* 35 F.Supp.2d at 353; *Torres v. Gristede's Operating Corp.* 2006 WL 2819730, *17, 2006 U.S. LEXIS 74039, *56 (S.D.N.Y. Sept. 28, 2006) New York law allows plaintiffs to waive their liquidated damages claim for overtime wage class actions "as long as putative class members are given

the opportunity to opt out of the class in order to pursue their own liquidated damages claims." *Mascol v. E & L Transportation, Inc.*, 2005 WL 1541045, at *8, 2005 U.S. Dist. LEXIS 32634, at *26–27 (E.D.N.Y. June 29, 2005); *see also Ansoumana*, 201 F.R.D. at 95. The court sees no problem with plaintiffs waiving their liquidated damages as long as notice is provided to the Rule 23 class instructing individuals how to opt-out in order to preserve their claims for liquidated damages.

### 2. The Exercise of Supplemental Jurisdiction over the Rule 23 Class

Defendants argue that the simultaneous creation of an FLSA representative action and a Rule 23 New York Labor Law class is an impediment to the exercise of supplemental jurisdiction over the New York Labor Law Claims. Defendants' contention is without merit.

 A court may properly assume supplemental jurisdiction over a state claim when the state and federal claims "derive from a common nucleus of operative fact," such that the parties "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In addition, a decision to exercise jurisdiction should consider whether "judicial economy, convenience and fairness to litigants" favor hearing the state and federal claims together. *Id.* at 726, 86 S.Ct. 1130. The Second Circuit has noted, "A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while not automatic, is a favored and normal course of action," *Promisel v. First American Artificial Flowers*, 943 F.2d 251, 254 (2d Cir.1991).

 In the present case, the federal and state law claims unquestionably derive from a common nucleus of operative fact and warrant the exercise of supplemental jurisdiction. The federal and state wage and hour claims are essentially the same and arise out of the same alleged conduct of the defendants. As the *Brzychnalski* court held in simultaneously certifying an FLSA representative action and a New York Minimum Wage Act Rule 23 class, "The members of both classes performed the same type of work for the same related employers and were deprived of overtime compensation purportedly as the result of the same alleged scheme. There is no reason why the claims should be separately litigated in two different courts." 35 F.Supp.2d at 354.

Nonetheless, defendants argue that the "conflicting purposes and procedures" of the FLSA opt-in requirements and the Rule 23 opt-out requirements render certification of the Rule 23 class inappropriate. Defendants apparently reject the overwhelming authority of cases from this district that have simultaneously certified FLSA and New York Labor Law claims, including, most recently, *Torres v. Gristede's Operating Corp.* 2006 WL 2819730, 2006 U.S. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006). *See also Ansoumana*, 201 F.R.D. 81; *Noble*, 224 F.R.D. 330, *Brzychnalski v. Unesco, Inc.*, 35 F.Supp.2d 351 (S.D.N.Y.1999); *Noble*, 224 F.R.D. 330; *Ouedraogo v. Durso Associates, Inc.*, 2005 WL 1423308, 2005 U.S. Dist. LEXIS 11954 (S.D.N.Y. June 16, 2005). This court has had no difficulty administering such cases in the past.

Defendants prefer to rely on cases from other circuits and districts, cases they imply *Torres* ignored at its peril. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 310 (3d Cir.2003), *McClain v. Leona's Pizzeria, Inc.* 222 F.R.D. 574, 577 (N.D.Ill.2004); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D.Tex.2003); *De La Cruz v. Gill Corn Farms, Inc.*, 03–cv–1133, *12 (N.D.N.Y.2005, McAvoy, J). Of course neither the *Torres* court nor this one is bound by the authorities defendants cite. They are particularly unpersuasive in light of the unambiguous precedent in this district—which, I again emphasize, has given me no difficulty before.

 Defendants further contend that this court should decline to exercise supplemental jurisdiction over the New York Labor Law claims because they predominate over the FLSA claims. They do not.

Under 28 U.S.C. § 1367(c), a district court has the discretion to decline to exercise supplemental jurisdiction over a claim if, inter alia, the claim "substantially predominates over the claim or claims over which the district court has original jurisdiction." Defen-

dants' argument that the New York Labor Law claims would predominate over the federal claims boils down to the unremarkable notion that the Rule 23 class will be larger than the FLSA representative action because the state claims are subject to a longer statute of limitations and because an opt-out class is virtually certain to have many more members than an FLSA action that requires individuals affirmatively to opt-in. For the reasons discussed above, and to avoid unnecessary confusion, the court is—at this stage—permitting the FLSA action to be defined by the six-year statute of limitations applicable to the New York Labor Law claims. However, even if that were not the case—and even if the court later determines that a shorter statute of limitations applies to the FLSA claims—the state law claims would not predominate over the federal ones.

Predominance under section § 1367(c)(2) relates to the type of claim being brought rather than the size of the respective classes. *See Gibbs*, 383 U.S. at 726–27, 86 S.Ct. 1130 (If "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.") Here, where the state law claims essentially replicate the FLSA claims, they plainly do not predominate.

Defendants cite a number of cases where courts have nonetheless considered large disparities in size germane to the predominance analysis. First, the court is not here faced with the sort of great disparity that others have found so troubling. *See De Asencio*, 342 F.3d. at 310. Second, and more important, none of the cases defendants rely on are binding upon this court, and to the extent that they suggest that differences in size can be a "dispositive" factor in the predominance inquiry even when the claims brought are virtually identical, this court disagrees with their analysis. *Id.* So apparently do other courts in this district, since they have unflinchingly certified FLSA and New York Labor Law claims together without so much as noting the inherent size disparities. *See e.g. Ouedraogo*, 2005 WL 1423308, *2, 2005 U.S. Dist. LEXIS 11954, *8; *Brzychnalski*, 35 F.Supp.2d at 354.

## V. The Request to Appoint Class Counsel

Plaintiffs asks this court to appoint the Workers' Rights Law Centers of New York, Inc. ("WRLC") class counsel pursuant to Rule 23(g). To that end, the court must consider the following: "(1) the work counsel has done in identifying or investigating potential claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class." The court may consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 339–340 (S.D.N.Y. 2004). There is no question—and defendants do not dispute—that the Workers' Rights Law Center of New York, Inc. ("WRLC") is qualified and able to litigate the class members' claims. By every indication, the WRLC has diligently identified and pursued the claims in this action to date. Moreover, the attorneys at the firm have considerable experience in employment law and class action litigation. (June 19, 2006 Werner Decl. at 5). They will undoubtedly commit the necessary resources to representing the class. The WRLC is therefore appointed class counsel.

## CONCLUSION

Plaintiffs' renewed motion is granted. This constitutes the decision and order of the Court.